UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL WATKINS TURNER,<br><br>  Petitioner,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Respondent, | Case No.: 2:19-cv-00051-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Daniel Watkins Turner's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability Benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On June 8, 2015, Daniel Watkins Turner ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2014. This claim was initially denied on September 16, 2015 and, again, on reconsideration on March 30, 2016. On April 4, 2016, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On September 22, 2017, ALJ Russell B. Wolff held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Barbara Harper, appeared and testified. Sara Statz, an impartial vocational expert, also appeared and testified at the same September 22, 2017 hearing.

On December 11, 2017, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely

**MEMORANDUM DECISION AND ORDER - 1**

requested review from the Appeals Council and, on December 17, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ's Decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed the instant action on February 11, 2019, arguing that the ALJ's disability determination "is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity." Pet. for Review, p. 2 (Dkt. 1). Specifically, Petitioner submits that the ALJ's Decision was not supported by substantial evidence, nor was it based upon the correct legal standard in the following respects: (1) the ALJ mischaracterized Petitioner's heart condition and therefore did not evaluate the heart condition under the proper Listing; (2) the ALJ erred when he dismissed Petitioner's credibility without providing clear and convincing reasons; (3) the ALJ improperly rejected a treating physician's opinion without providing specific and legitimate reasons; and (4) the ALJ erred when he determined an RFC which was not supported by the medical evidence nor in compliance with the Social Security regulations. *See* Pet.'s Brief, p. 7 (Dkt. 15). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings. *See id*. at pp. 19-20; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing courts "will not rubber-stamp an administrative decision

**MEMORANDUM DECISION AND ORDER - 3**

that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. ANALYSIS

### A.  Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2014 through his date last insured of December 31, 2016." (AR 17).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it

**MEMORANDUM DECISION AND ORDER - 4**

significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following medically determinable impairments: "degenerative disc disease, recurrent arrhythmias, and obesity." (AR 17).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 18-20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must

**MEMORANDUM DECISION AND ORDER - 5**

be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift and carry 10 pounds occasionally and less than 10 pounds frequently; he can push and pull as much as he can lift and carry; he can sit for 6 hours, stand for 2 hours, and walk for 2 hours in an 8 hour workday; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, and crouch; he can never kneel or crawl; he can never work at unprotected heights or around moving mechanical parts; he can never be exposed to dust, odors, fumes, and pulmonary irritants; he can never work in extremes of cold or heat; and he can never work around vibration.

(AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that, "[t]hrough the date last insured, the claimant was unable to perform any past relevant work." (AR 25). Even so, considering his age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that he can perform, including document preparer microfiliming, escort vehicle driver, and election clerk. *See* (AR 25-26). Therefore, the ALJ concluded that Petitioner "was not under a disability, as defined by the Social Security Act, at any time from March 1, 2014, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g))." (AR 26).

**B.     Analysis**

**MEMORANDUM DECISION AND ORDER - 6**

1.   The ALJ Did Not Properly Consider Petitioner's Congestive Heart Failure at Steps Two and Three of the Sequential Process

At step two of the sequential process, the ALJ noted that Petitioner's recurrent arrhythmias were severe, but that, at step three of the sequential process, it did not meet or equal Listing 4.05 (Recurrent Arrhythmias).  *See supra* (citing (AR 17-20).  Petitioner does not dispute these findings in and of themselves, except to the extent that they overlook his congestive heart failure at step two, while relatedly failing to analyze whether his congestive heart failure met or equaled Listing 4.02 (Chronic Heart Failure) at step three.  *See* Pet.'s Brief, pp. 8-10 (Dkt. 15).

To begin, recurrent arrhythmias and congestive heart failure are distinct impairments; each has a separate qualifying Listing with unique characteristics.  Listing 4.02 addresses chronic heart failure while undergoing prescribed treatment, with specific requirements under both section A and section B.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02.  Here, the relevant sections of A and B require:  (1) the "[m]edically documented presence of . . . [s]ystolic failure . . ., with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)" (the section A criteria); and (2) "[p]ersistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual" (the section B criteria).  *Id.*

The ALJ did not reference Petitioner's congestive heart failure as a severe impairment at step two and, likewise, did not consider Listing 4.02 at step three.  According to Petitioner, "[t]here was at least a reasonable probability that [his] cardiac condition met or equaled Listing 4.02 had it been properly understood and evaluated."  Pet.'s Brief, p. 10 (Dkt. 15).  Respondent

**MEMORANDUM DECISION AND ORDER - 7**

admits the fact of such omissions at steps two and three, but argues that the ALJ's overall evaluation of Petitioner's congestive heart failure did not prejudice Petitioner because (1) the ALJ resolved step two in Petitioner's favor, accounting for Petitioner's congestive heart failure at the "salient points" of the sequential process (namely, at step four when addressing Petitioner's RFC); and (2) Petitioner does not meet Listing 4.02 regardless. *See* Respt.'s Brief, pp. 4-7 (Dkt. 18). The Court disagrees with Respondent for the following reasons.

First, even though step two may have been decided in Petitioner's favor (in that the ALJ found that Petitioner had certain severe impairments, albeit *not* congestive heart failure), that argument misses a critical point. A failure to recognize an impairment at step two may be harmless if that impairment and its matching limitations are folded into the latter steps of the sequential process. But by not identifying Petitioner's congestive heart failure as a severe impairment at step two, the ALJ necessarily did not measure Petitioner's congestive heart failure against Listing 4.02 at step three. If he had done so, and if Petitioner's congestive heart failure met or equaled Listing 4.02, then Petitioner is disabled under the Social Security Act and entitled to benefits (without reaching steps four and five). In short, the ALJ's arguably incomplete characterization of Petitioner's heart condition at step two contributed to the unresolved error at step three. To hold otherwise would render steps two and three unnecessary in favor of step four. Respondent offers no authority for that scenario and the Court will not stake such ground here.

Second, on the issue of whether Petitioner's congestive heart failure meets Listing 4.02, Respondent argues that the ALJ's failure to discuss congestive heart failure at step three is inconsequential based on these three arguments: (1) Petitioner was not "on a regimen of prescribed treatment" as Listing 4.02 requires; (2) Petitioner lacked the "persistent symptoms of heart failure" identified within Listing 4.02's section B criteria; and (3) no expert stated an

**MEMORANDUM DECISION AND ORDER - 8**

exercise test would pose a significant risk to Petitioner under Listing 4.02's section B criteria. *See* Respt.'s Brief, pp. 5-7 (Dkt. 18) ("[T]he ALJ's lack of discussion of congestive heart failure at step three did not harm Petitioner because he does not meet this Listing.  In fact, the very records Petitioner relies on to establish he meets Listing 4.02 show that his condition is not sufficient to render him *per se* disabled.").  There are some circumstances in which an after-the-fact comparison of Listing criteria against the available medical evidence may support a finding that a claimant does not meet that Listing.  This case is not one of them.

For example, to counter Respondent's arguments (and corresponding references to the record), Petitioner describes evidence to the opposite – in particular, that, in fact, he was receiving consistent care by his primary care physician, Andrew Cron, M.D., attending cardiology appointments and taking his medications, and exhibited congestive heart failure symptoms.  *See* Pet.'s Brief, pp. 9-10 (Dkt. 15) (citing (AR 310, 322, 328, 342, 356, 569, 593, 655)); *see also* Pet.'s Reply Brief, pp. 2-3 (Dkt. 19) (citing (AR 310, 312, 322, 335, 344, 350, 356, 363, 365, 359, 379, 424, 433-34, 462, 466, 569)).[1]  In short, without more, whether Petitioner could have (or absolutely could not have) met Listing 4.02's section A and section B criteria cannot be inferred.

The purpose of describing these details is not to answer whether Petitioner's congestive heart failure represented a severe impairment at step two and, if so, whether it met or equaled Listing 4.02 at step three.  Rather, doing so illustrates that the parties' respective positions on these questions is not as clear-cut as each contends.  In that arena, it is the ALJ, not this Court, to

---

[1] Petitioner concedes that no expert formally concluded that the performance of an exercise test presented a significant risk to him, arguing instead that, because a nuclear stress test was administered, "the logical conclusion drawn is that a treadmill test would have been detrimental to [him]." Pet.'s Brief, pp. 9-10 (Dkt. 15). The Court does not endorse this deduction, but also (considering the balance of factors presented on this question) does not consider the issue dispositive one way or the other.

**MEMORANDUM DECISION AND ORDER - 9**

consider such evidence and, if necessary, to order further medical evaluation to inform the inquiry. That milepost was missed and therefore the ALJ's conclusions (and attendant reasoning) in these respects cannot be unpacked and considered. As a result, the Court cannot confidently conclude that the ALJ's possible oversights at steps two and three were harmless. Remand is required *unless* "harmlessness is clear and not a 'borderline question.'" *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Hence, whether Listing 4.02 applies is to be resolved on remand.

        2.        <u>The ALJ Did Not Provide Specific and Legitimate Reasons For Rejecting Dr. Cron's Opinions</u>

Petitioner's treating physician, Dr. Cron, appeared to indicate within a May 2017 "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that Petitioner's functional limitations were consistent with a finding of disability. *See generally* (AR 518-23); *see also* (AR 23) (ALJ characterizing Dr. Cron's Statement as follows: "The opinion indicates a less than sedentary level exertional ability, with a sitting limitation of 2 hours, standing of 2 hours, and walking of 1 hour total in an 8 hour workday. Postural activities, other than climbing ramps and stairs which was occasional, were listed as best if never performed. Similarly, the claimant could occasionally operate a motor vehicle, but he could never be exposed to any other environmental limitation."). The ALJ gave the opinion "no weight" because it was unclear who (between Petitioner, his wife, or Dr. Cron) filled out the Statement, and, regardless, was inconsistent with the overall medical evidence of record. *See* (AR 23). Petitioner argues that in wholly rejecting the limitations reflected in Dr. Cron's Statement, the ALJ did not provide the specific and legitimate reasons required for doing so. *See* Pet.'s Brief, pp. 12-15 (Dkt. 15) ("[T]he ALJ provided no specific or legitimate reasons to reject Dr. Cron's

**MEMORANDUM DECISION AND ORDER - 10**

opinion.  Dr. Cron provided an opinion based upon notes and care provided by Petitioner's specialists, as well as his own observations of the Petitioner.").  The Court agrees.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750.  Clear and convincing reasons must be provided for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Looking only at the Statement itself, there is an open question as to whether it is entirely attributed to Dr. Cron – as the ALJ noted, "several comments in the opinion . . . appeared to be written in the first person which suggests that the claimant filled out the form."  (AR 23).  Petitioner testified at the hearing that his ex-wife "probably did fill that stuff out."  (AR 55); *see also infra* (colloquy between ALJ, Petitioner, and Petitioner's counsel at hearing).  Even so, nothing suggest that Dr. Cron did not agree with the Statement's contents; he did, after all, review, separately contribute to, and sign the Statement on the same day that he saw Petitioner for follow-up treatment – May 4, 2017.  *Compare* (AR 523) (Dr. Cron's signature on Statement dated May 4, 2017, with separate notation of: "limited endurance, strength, and A. Fib due to multiple medical problems"), *with* (AR 671) (May 4, 2017 treatment note stating: "[Petitioner] [h]as been followed by cardiology, cont[inue] to limit function, disability paperwork

**MEMORANDUM DECISION AND ORDER - 11**

completed"). Petitioner confirmed as much during the hearing when the issue over who authored the Statement was originally raised by the ALJ – in particular:

> ALJ: All right. Concerning the purported medical source statement from Dr. Cron at F7. Well, let me ask you, do you know what we're referring to? There's a medical source statement from Dr. Cron in the record that identifies different limitations upon things you can do. Do you know what I'm talking about, what I'm referring to?
>
> PET: There's been a lot going on. I've seen a lot of doctors, almost weekly, so yeah – I'm sorry. I wish I did.
>
> ALJ: Okay. That's fine. No, that's why . . . I asked, just to see if you did. All right. Counsel, that document doesn't make sense to me. When you read it, it appears that in fact the claimant completed it and not the doctor. And that's what I – I don't know what to draw from that –
>
> ATTY: Right.
>
> ALJ: -- review. Because, in fact, as you're, I'm sure, aware because having looked at it, your reference is at Page 4, the side effects of medication that blurred my vision. And at Page 5, based on the medications I am prescribed. Clearly, Dr. Cron is not saying those things about himself.
>
> ATTY: Right.
>
> ALJ: So, I don't know what I'm supposed to take from that document as to what is a medical source opinion –
>
> ATTY: Right.
>
> ALJ: -- and what is representation from your client.
>
> ATTY: I looked at the very end of it, Page 6.
>
> ALJ: Uh-huh.
>
> ATTY: We're at number nine and that's, I mean, definitely a different handwriting and it's limited – it's really hard to read too and strained – effects multiple medical problems. So, what I took from that is that Dr. Cron probably asked Mr. Turner or Mr. Turner's wife – ex-wife to fill it out and then he reviewed it and he signed it. Do you recall going over it with him?

**MEMORANDUM DECISION AND ORDER - 12**

| | |
|---|---|
| PET: | I went over it with him, but I believe my ex-wife, I believe, probably did fill that stuff out.  Because she had even taken the stuff and taken it in to him. |
| ATTY: | That look familiar?  I'm showing him the Exhibit and seeing if it looks familiar. |
| PET: | I'm sorry, the writing and stuff? |
| ATTY: | Yeah, look like her – |
| PET: | Yeah, it looks like her writing. |
| ATTY: | Okay.  Did you discuss this document with Dr. Cron? |
| PET: | Yes, yes.  I was there. |
| ATTY: | Okay. |
| PET: | I mean, I can – I make appointments and they wouldn't sign anything or give me anything without me being there, of course. |
| ATTY: | Okay.  That's all. |
| ALJ: | Do you have reading, writing capacities?  Are you capable of writing in English?  I'm trying to figure why your wife would have filled this out for you and then referred to herself as you. |
| PET: | She's always done everything for me, I guess.  That's the best I can say. |
| ALJ: | Right. |
| PET: | I really – yeah. |
| ATTY: | Did you ask her or tell her what to say? |
| PET: | Of course. |
| ATTY: | Okay. |
| PET: | Yeah, I mean, sitting right next to her, telling me, asking me everything, yes. |
| ATTY: | I see.  Okay. |

**MEMORANDUM DECISION AND ORDER - 13**

(AR 54-56). In other words, even if Petitioner's ex-wife completed portions of the Statement before Dr. Cron signed off on the same, that fact cannot serve to invalidate the opinions it contains. Dr. Cron had been treating Petitioner over time (*see infra*), and it goes too far to conclude (as the ALJ did) that "the entirety of the opinion [is] meaningless as there is no way to discern which portions, if any, may have come from Dr. Cron." (AR 23).

Moreover, the record is uncontested as to Dr. Cron's historic involvement in Petitioner's overall treatment, including as the referring provider for Petitioner's pain management and cardiac care. *See* Pet.'s Brief, p. 14 (Dkt. 15). Likewise, Respondent does not dispute that such treatment revealed that Petitioner suffered from significant cardiac impairments. Instead, Respondent contends that such cardiac problems were improving as of early 2017, such that Dr. Cron's opinions do not align with the overall record. *See* Respt.'s Brief, pp. 11-12 (Dkt. 18) ("By early 2017, Petitioner's left ventricular ejection fracture had improved to 50-55%. Petitioner's back pain was improved with massage and pain medications. Overall, his pain medications "work well." An X-Ray of Petitioner's spine revealed mild findings. These records, discussed earlier in the ALJ's decision, supported the conclusion that the form Dr. Cron signed was contradicted by the treatment record as a whole.") (internal citations omitted).

Still, despite the medical record reflecting certain improvements in Petitioner's health, "such observations must be 'read in the context of the overall diagnostic picture' the provider draws." *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods are not inconsistent with disability."). Said another way, the fact that a person suffering from a heart condition (to include recurrent arrhythmias and congestive heart failure (*see supra*)) and degenerative disc disease makes some improvement "does not mean that the person's impairments no longer seriously affect [his]

**MEMORANDUM DECISION AND ORDER - 14**

ability to function in a workplace." *Holohan*, 246 F.3d at 1205; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008). Though this is indeed possible, Petitioner includes references to the record during this same time-frame that counterbalance the improvements the ALJ cites as support for framing Dr. Cron's opinions against a contrasting medical record. *See* Pet.'s Reply Brief, p. 5 (Dkt. 19).

This Court does not resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court decides whether the ALJ's decision that Petitioner is not disabled is supported by the record. This record has conflicting medical opinions, testimony, and other evidence that inform the ALJ's decision on how to consider the various opinions. But, the ALJ's decision to give "no weight" to Dr. Cron's opinions is not supported by specific and legitimate reasons for doing so. It may be that Petitioner is not disabled and that Dr. Cron's opinions are legitimately at odds with the balance of the medical record. However, such evidence is undeveloped and not before the Court. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely). Until then, remand is appropriate on this issue.

3.  Petitioner's Credibility

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and

**MEMORANDUM DECISION AND ORDER - 15**

conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

As described, the ALJ erred in his assessment of Dr. Cron's opinions. *See supra*. Hence, the Court will not address issues surrounding Petitioner credibility in great depth, considering that the ALJ's credibility determination is necessarily tethered to the medical record. *See, e.g.*, (AR 24) (ALJ stating: "The treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges."). Nevertheless, the Court notes (as did the ALJ) that trending improvements in his condition, better pain management with massage therapy and prescribed medical treatment, and daily activities – considered in isolation – can support a conclusion that Petitioner's statements about the intensity, persistence, and limiting effects of his claimed pain or other symptoms may be less than fully credible. *See, e.g.*, (AR 22-24). However, the ALJ's credibility determination also is tethered to his having decided to give absolutely "no weight" to Dr. Cron's opinions. Hence, for the reasons described in this decision, the evidentiary landscape for questioning Petitioner's credibility has changed. Hence, remand is also appropriate in this respect.

    4.    <u>Petitioner's RFC</u>

**MEMORANDUM DECISION AND ORDER - 16**

The ALJ determined that Petitioner retains the RFC to perform sedentary work with certain limitations, including "never be[ing] exposed to dust, odors, fumes, and pulmonary irritants." (AR 20). Petitioner argues that the ALJ erred at step 5 of the sequential process because the jobs identified therein as being consistent with Petitioner's RFC (document preparer microfiliming, escort vehicle driver, and election clerk) actually involved exposure to dust, odors, fumes, and/or pulmonary irritants. *See* Pet.'s Brief, p. 17 (Dkt. 15) ("The ALJ's step five finding contained no discussion of the effect no exposure to dust, fumes, and pulmonary irritants would have on the availability of other work in the national economy.").

Petitioner's argument in this respect is premised upon a basic understanding of these jobs and generally tracks logically enough – in other words, it is conceivable, as Petitioner posits, that "[p]aper products and cutting paper create dust and photocopying machines potentially create fumes with the use of ink products"; that "[p]ublic thoroughfares are notorious for fumes, dust, and pulmonary irritants"; and that "[w]orking in a public place with the public and with paper products such as ballots or ballot lists would include working with fumes, dust, and pulmonary irritants." *Id*. at pp. 17-18. However, as Respondent points out, in the Dictionary of Occupational Titles (DOT) definitional trailer of all three jobs, tasting/smelling, atmospheric conditions, exposure to weather, toxic caustic chemicals, and other environmental conditions were "Not Present – Activity or condition does not exist." Respt.'s Brief, p. 13 (citing Document Preparer, Microfilming, DOT #249.587-018, *available at* 1991 WL 672349; Escort-Vehicle Driver, DOT #919.663-022, *available at* 1991 WL 687886; Election Clerk, DOT 205.367-030, *available at* 1991 WL 671719). Accordingly, these categories, in conjunction with supporting vocational expert testimony, demonstrate that there was no conflict between the vocational hypothetical and the jobs identified.

**MEMORANDUM DECISION AND ORDER - 17**

Having said this, because the Court remands the ALJ's findings for other reasons (e.g. whether Petitioner's congestive heart failure meets Listing 4.02, the weighing of medical opinions, and Petitioner's credibility), the ALJ should again consider the effects of Petitioner's impairments on remand and discuss their impact, along with a renewed assessment of the medical opinions and Petitioner's credibility, on Petitioner's RFC.  So, while not specifically remanding the issue of Petitioner's RFC based on the argument Petitioner raises here, the practical effect of remanding other issues may ultimately affect Petitioner's RFC on remand.

## IV.  **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *See Key*, 754 F.2d at 1549.

However, the ALJ did not proper consider Petitioner's congestive heart failure. Additionally, the reasons given by the ALJ for rejecting Dr. Cron's opinions are not properly supported, potentially affecting the ALJ's credibility determination, and RFC.  This case is therefore remanded for reconsideration for these reasons.

///

///

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 18**

## V. **ORDER**

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: May 18, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge